Hear ye, hear ye. The United States Court of Appeals is now open according to law. God save the United States and this honorable court. All right. Good morning, counsel. Right now we are a panel of two judges. Judge Jones expects to hopefully join in a few minutes, but she wants us to go ahead and get started and she will listen to the portions that she's not here live for since it's being recorded. But she'll listen to that. So we'll go ahead and begin and start with counsel for the petitioner whenever you're ready, sir. Thank you very much, your honors. And may it please the court, Reynaldo Resaya Recupero for petitioner Freddy Omar Gonzalez Hernandez. We respectfully reserve five minutes for rebuttal. In 2016, this court in Lugo Resendez specifically admonished the Board of Immigration Appeals not to apply equitable tolling standard quote, too harshly because quote, denying an alien the opportunity to see cancellation of removal when it is evident that the basis for his removal is now invalid is a particularly serious matter, end quote. Yet in this case, the board has chosen to do just that with respect to Mr. Gonzalez's application. And in doing so, it committed three legal errors, which this appeal seeks to correct. Both parties to this appeal recognize that Mr. Gonzalez's underlying deportation is unlawful. The only question is whether the document of equitable tolling should be drawn so narrowly that an individual who filed a motion to reconsider and reopen within 21 days of learning of the unlawfulness of his removal should have his application rejected as untimely. We believe that the immigration judge and the Board of Immigration Appeals failure to properly apply the equitable tolling standard violated that doctrine. And this case warrants remand. There are three errors. The first of which is that the immigration judge and the Board of Immigration Appeals applied the wrong date for assessing tolling. The second is that they incorrectly self-imposed a bright line cap on tolling out of whole cloth when none is permitted under the case law of this court. And third, they ignored the motion to reopen portion of a compound motion. And we know that that failure to adjudicate that is part of a parallel proceeding that is currently before the Board of Immigration Appeals. But we noted here for reasons that we will discuss as to how it relates to Mr. Gonzalez's case. But first, context here is important because the petitioner here was as diligent as could be expected of any person applying for relief from outside the United States, especially from a dangerous country like El Salvador. Mr. Gonzalez did everything that this court and the board's case law instructs someone in his position to do. He remained vigilant about the law. He obtained counsel. He filed promptly. He did all of those things yet despite having submitted his compound filing within three months of the Supreme Court's decision in DiMaio versus Sessions, upon which he bases his claims for relief, he was barred as untimely. He is a citizen. For tolling, you need two things, basically diligence and an extraordinary circumstance. And assume your client was diligent, as you've just said. I take the immigration judge's reasoning to be that once he learned of DiMaio, there was no longer an extraordinary circumstance and therefore the clock starts ticking. So why isn't that the case under the extraordinary circumstance prong? Yes, Your Honor. And that is what we believe is our first error because instead of using what the court actually articulated was learned of the quote unquote potential impact of DiMaio. So it learned that DiMaio had occurred and it did not, the BIA nor the board claimed that Mr. Gonzalez understood how it applied to his particular case at the time. It articulated for the first time in the case law that we can find quote unquote potential impact or potential effect of DiMaio. And what we're saying is under the case law of this court, specifically Lugo Resendez, that the correct standard is discovered that his deportation was unlawful. Mr. Gonzalez did not discover that his deportation was unlawful until he was advised of that by counsel. And that occurred on June 21st, 2018. When Mr. Gonzalez, and we have cited numerous cases on pages 26 to 28 of our brief, where for represented petitioners like Mr. Gonzalez, the analysis appropriately begins when they secured counsel. So we said, we said cases from this circuit, including Lugo Resendez. We said cases from the board, including Bautista Marino, which counted from when counsel was secured. Hernandez Villegas, when counsel was secured. And in this case, even petitioner's own brother, whose own equitable tolling application was assessed from when the point that his counsel was able to advise him of the unlawfulness of his removal. This language is important because the unlawfulness of that deportation was not able to be determined by Mr. Gonzalez simply by hearing a news report about the DiMaio case. And the DiMaio case, your honors, it requires some nuance to recognize how it applies to Mr. Gonzalez's case. It was not simply stating that the Texas Penal Code statute for which Mr. Gonzalez's infraction had been taken was itself invalid. It requires knowledge of the categorical approach of statutory interpretation, the voided vagueness doctrine and those constitutional principles and the impact of DiMaio have to be applied to Mr. Gonzalez's specific case so that a non-attorney, and as was happening in this case, Mr. Gonzalez's brother, or even attorneys who do not have Mr. Gonzalez's full record would not be able to advise on the unlawfulness of his removal. And by the immigration judge using that date for measuring the tolling was incorrect. This case involves one where even an attorney who didn't have access to Mr. Gonzalez's records would not have been able to assess it in that manner. The potential effects test or the potential impact test that the respondent is arguing is what is the truly novel piece here because not only equitable tolling is to be governed not too harshly, there is no case law support for the potential effects test that they have articulated. What the IJ and the BIA cited to was Gonzalez-Cantu in the first instance in Nasiri. There's some careful bracketing in Nasiri. And with respect to Gonzalez-Cantu, that was dicta because Gonzalez-Cantu never reached the issue of when the equitable tolling needed to be examined from because in that case, it never actually reached it because Ms. Gonzalez-Cantu never provided any facts whatsoever into the record concerning her diligence or how the tolling was going to be evaluated. So this court never reached it. So to base and to impose an incorrect potential effects test on Mr. Gonzalez based on Gonzalez-Cantu simply is not supported by the case law. And as we noted, it was from the moment of counsel that should affect here. But more to the point, we also note that the second error for the immigration judge was imposing the 30-day limit on tolling. And Lugo-Racenda specifically prevents this from happening. It says, quote, unquote, equitable tolling does not lend itself to bright line rules. And yet that's exactly here what the immigration judge did and the board approved of. And we've cited the case of Bautista-Marino at Appendix 6 of our brief, which was issued two days after the DeMaia decision. And in that case, the board did there exactly what it should have done in Mr. Gonzalez's case. It examined and individually assessed whether the petitioner qualified for equitable tolling. It told the deadline as appropriate, and it did not articulate some limit to the amount of tolling it was able to or time limit on the tolling it was able to permit. In Bautista-Marino, the board knew that the petitioner had retained counsel in March of 2016, that the Supreme Court decision at issue that affected his case was in July of 2016. And then it accepted as timely motion for equitable tolling that had been made in October of 2017. So aside from the fact that it would be deeply inequitable for Mr. Gonzalez to have to be rejected after filing his motion within 21 days, as compared to Mr. Bautista-Marino having had his adjudicated after more than a year, the importance of Bautista-Marino is that it articulates that the board never imposed on itself a limit that equitable tolling only goes for 30 more days or 90 more days, because in fact, that's never been articulated by this court. And nor would it make sense from an equitable tolling standpoint, because there would not be a need to examine diligence if it were simply the reinstitution of the same 30 or 90 day period, which is exactly why the controlling law of this circuit, Lugo Resende, specifically says that bright line rules are not to be used. And there are good reasons that equitable tolling can extend beyond the 30 or 90 days as applicable, which is because there are, in this case, there were two extraordinary circumstances. One was the change in law and respondent is not disputing that DiMaio was a change in law. The other is the extraordinary circumstance of Mr. Gonzalez having to apply extraterritorially. And the amici in this case explain it at substantial and convincing length, the difficulties of filing a motion to reopen and reconsider from outside the United States. And the fact that if it were as the plaintiff, as the respondents request, simply adding another 30 days and having that be the limit of equitable tolling for many individuals outside, I guess I'm a little confused. The court didn't equitably toll for just 30 days, as I see it, the immigration judge equitably told for years, I think about 15 years or more, and then said, I'm going to toll for all that period. But then once DiMaio was issued and his brother learned about it, the clock starts running and then the clock is only 30 days. But I mean, the tolling was for years, right? Yes, the tolling was from the 2002. And that's what we're saying. The tolling is for as long as the court examines the circumstance. It is not as long as the court examines the circumstances and then another 30 or 60 days. What we're saying is that the tolling is not limited because it didn't happen in Bautista Barino, which the which the court found it would be inequitable here, but also because if if that were to happen, if it were, as they suggest, you discover a change and are advised of the unlawfulness of your deportation, which we believe is the appropriate standard. And then you simply add the next 30 days to that. That's not that there would be no reason to examine diligence and and examine the full totality of the circumstances, which is what Lugo Resendez requires that this court doesn't, which this court has done in many circumstances in which what the board normally does. There is no there was no articulate in the repeated articulation of equitable tolling by the board and by this court. We have not been able to find a self-limiting principle of 30 or 90 days. Now, we note that many times individuals will describe how their diligence compares to someone who would not have needed equitable tolling. That notably a motion to reopen is the statutory deadline for that had we not required tolling would have been 30 days and we filed in and they relate to how their diligence in those terms. But that is not a cutoff. And we think it couldn't be a cutoff because, for example, in Mr. Gonzalez case, the ability to even obtain the records for a motion to reopen or reconsider extraterritorially to obtain the translations and all of the other materials that are required in order to make a successful motion to reopen for someone outside the United States is essentially de facto impossible for many of them. Mr. Gonzalez's case is particularly now because he had the ability to do that because he would I would say he went beyond what was required, which is as Justice Breyer wrote for equitable tolling, reasonable diligence, not maximum feasible diligence. We believe he more than did that, but he was able to attempt to gather materials in a way that was truly extraordinary, which would further militate against having equitable tolling fight against him. But the idea that equitable tolling only goes to 30 or 90 days does not fit with case law and does not and is not compliant with Lugo Resendez in this matter. In fact, Mr. Lugo Resendez. You have a few minutes left if you can address the the motion to reopen issue and explain to me the difference between the motion to reopen in the posture we have it and what you mentioned at the outset, which is the the now pending motion to reopen the BIA. Thank you, Your Honor. With respect to the motion to reopen itself, there is under Nassiri, there's a further exhaustion requirement because we asked for a motion to reopen and the board did not deal that adjudicate that we have to, again, go back to the board on a motion for reconsideration that has been pending for two years. But what the reason that we we raised that issue here is that under the Reyes-Mata case, a motion to reopen and a motion to reconsider. Both are basis for challenging a change in law, which everyone concedes to Maya is, and either of them can serve as a basis to have the case opened again, considered and terminated. That's what we're asking for. What the board and the IJ did here is they ignored one entire part of our combined motion and are penalizing Mr. Gonzalez for not complying with its new time limit as to the motion for reconsideration when the motion to reopen was would also require equitable tolling. But we filed within 87 days of the Supreme Court decision in to Maya versus session. And by doing that, Reyes-Mata says that this came back from the Supreme Court to this case, admonishing to this court, admonishing this court for construing one kind of filing for another where the results would render relief impossible. And that's exactly what the board did here. It construed it only took the motion for reconsideration portion. It ignored the motion to reopen portion. And by doing so, it attempted to render relief impossible where Mr. Gonzalez's case fit. So, counsel, what do you see is the different? I mean, you have these two different motions, two different procedures. You would think they cover some different things. What, in your view, is the difference between a motion for reconsideration and a motion to reopen? In this case, there's very little practical difference, your honor. And we asked for both because the practice manual. I'm going to step back for a second. Generally speaking, what is the difference between these two different procedures? So, for example, to take one where it would make a difference in a post conviction release case is if a person went back and had his conviction overturned. That's a change of fact. A motion to reopen motion for reconsider. Would not be available to him here. We essentially qualify for both relief and we are permitted to seek both relief. And that's what we've done. And we did that because the change in law as they speak to in depth and as our brief speaks to in depth can each be an independent basis for having this court deem the motion to deem relief. Except let me just ask you this, counsel. Sorry. Are you saying that you qualify for both motion to reconsider and motion to reopen? Yes, because the decision constitutes new facts for purposes of a motion to reopen. Yes. And that is exactly what happened. OK, I'm glad. So I'm glad I understand the argument, because that is what the statute says. The motion to reopen shall state the new facts. That's different from the way the motion reconsider statute is written. So what's your best best case for a change in law constitutes new facts for purposes of a motion to reopen? Garcia Carias from 2012 and in the line of cases that we cite at pages seven to 12 of the amici brief and at page 37 of our brief, we have I've read I read the cases. So do we have a case that specifically decides that or a case that just sort of assumes that and then decides on some other ground, you know, equitable tolling not matter or something like that? I'm just looking for a case that squarely decides this issue, which is a little perplexing to me, since normally you don't think of a new decision of a court as a new fact. Yes, Gonzalez, Gonzalez Carias in 2012 specifically permitted that. So Gonzalez Carias. OK, well, we'll hear what the government says about that. Excuse me, Garcia Carias. Thank you. Yeah, right, right, right. Go ahead, go ahead. All right. Well, Judge Jones just joined. I don't know if you have any questions, Judge Jones, for petitioner's counsel, who also good as rebuttal, of course. Oh, I'll wait for a but am I am I muted? No. OK, I'll wait for rebuttal. Thank you. OK. All right. Well, thank you, counsel. You'll get your five minutes for rebuttal and we'll now hear from the government whenever you're ready, sir. Good morning, Your Honors. May it please the court, Giovanni DiMaggio on behalf of the Attorney General. Your Honors, there are two reasons why the court should conclude that the board did not abuse its discretion in denying Mr. Gonzalez's untimely motion to reconsider his final and unchallenged order of removal executed 16 years prior to his filing his motion. First, the motion to reconsider was not timely because even assuming the applicability of equitable tolling as the board did here, he didn't file within 30 days. And second, the motion was not one to reopen because it alleged no new facts to be proven at a hearing. I'll take these in turn. With respect to the untimeliness of the motion to reconsider, it was consistent with this court's decisions in Gonzalez-Cantu and in Nassiri, which the board relied on on pages eight and nine of the record for the board to assume the applicability of Mr. Gonzalez did not file within the statutorily prescribed period, in this case, 30 days. So let's walk through that. In Lugo Rescindas, which Petitioners Council relies on heavily, the court clarified that equitable tolling only applies, as Judge Costa mentioned earlier, only where there are two elements met, that the petitioner is pursuing his rights diligently and that an extraordinary circumstance stands in his way to prevent his filing. At record page 182 and in the opening brief at record page 20, Petitioner admits that the extraordinary circumstance that prevented him from filing was simply that the Supreme Court had not yet issued demaia. That extraordinary circumstance was removed when, and this is on record page 222 and 256, where respectively, Mr. Gonzalez and his brother admit that on the same day that demaia issued, they, quote demaia, seemed to verify that his conviction was not a deportable offense. How did they know that? Because by that point, again, the same day, Mr. Demaia's brother had messaged him and also had confirmed with two separate immigration attorneys that demaia could actually help his case out. And in addition to that, his brother had even reached out to the Immigrant Defense Project, who with obviously Nixon Peabody ended up filing the motion, albeit some three months later. So against this factual backdrop and legal backdrop, the board did not abuse its discretion in deciding not to draw a bright line rule, but to draw a line in the sand at the point in time when the extraordinary circumstance that supposedly prevented Mr. Gonzalez from filing this motion was no longer so impeding him. And at that point, appropriately started the statutory clock, which in this case was for 30 days. Now, the clock was for 30 days, not for 90, because his motion did not constitute one to reopen. Why is that? Well, it was consistent with the Immigration and Nationality Act, as well as with this court's decisions in Singh and Zhao, that the board concluded that a change in law does not equal new facts to be proven at a hearing, quote unquote, which is the language from the statute. Counsel opposite says that Garcia Carias is, well, he says there are several decisions that stand for the proposition that new law can equate to new facts for purposes of a motion to dismiss. I've read, I haven't read all of them or some of them. Some of the cases I've read seem to assume that. Counsel opposite identifies Garcia Carias as a case that squarely holds that. So if our decisions have held that new facts can equal new law, how can we decide otherwise? Well, for one, your honor, what this court's decisions have clarified, for example, in Zhao, are that as we were, as your honors were discussing with petitioner's counsel earlier, the difference between a motion to reopen and a motion to reconsider are that a motion to reopen presents new evidence to be proven at a hearing and a motion to reconsider asks for reevaluation of the existing record evidence only for error of fact or law. This court in Barillas Rivera, 668 Federal Appendix 81, applied Zhao to reject a petitioner's argument that the board erred in construing a motion as one to reconsider rather than one to reopen, where in that instance, the petitioner had relied solely on a motion to reconsider. So what are the petitioners doing here? To be clear, to the extent that Mr. Gonzalez sought reopening, he does so only in a footnote that is buried on the penultimate page of his motion. And it reads a page 184 of the record as follows, I quote in relevant part, to the extent this court deems the Supreme Court's ruling in demaio to constitute new facts, quote unquote. Rather than a change in law, Mr. Demagio seeks reopening of his removal proceedings pursuant to the statutory reopening provision of the INA. You know, Mr. Demagio, the cases say with respect to a motion to reopen, our court and the Supreme Court have said that it can be new facts or, quote, new circumstances. I think Lugar-Resendez says that. I think the Supreme Court decision that it cites says that. Does new circumstances include a change in the legal landscape? Your Honor, the new circumstances language is found where? I'm sorry. I'm sure. I'm sorry. So I've seen at least twice in our cases where we say, you know, a motion to reopen can can encompass new facts or a change in circumstances. I hope I'm getting that right. If not, I'm just wasting everybody's time. But I just thought of that expanded beyond new facts. I'm just trying to figure out what a new motion to reopen. This ought to be simple, but it's not. I think. Sorry. No, I think the answer actually is simple. And to the extent that there's some ambiguity about, you know, what is a new circumstance? Is that a new fact? I think it's always helpful to go back to the statutory language. And it's clear that for a motion to reopen to be a motion to reopen, it has to state new facts that will be proven at a hearing. In contrast to the motion to reconsider statute language, which indicates that the motion will only specify errors of law or fact in the existing order and shall be supported by pertinent authority, i.e., for example, a change in law as opposed to some factual circumstance like a conviction being vacated by the state court. Or that it's Dada versus Mukasey, which we've quoted Dada, the Supreme Court case from 2008. It says a motion to reopen is a form of procedural relief that asks the board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing. And it's citing there an immigration law treatise, I think. I'm not sure that's helpful in and of itself, but we've we've quoted that. Sure. It's not inconsistent to say that there needs to be evidence, you said evidence or change in circumstances, which would have to support, again, falling back to the statute, new facts that if proven at a hearing would show that the individual would be eligible for relief. And in this instance, as I was quoting to you from that one footnote where he couches the entirety of his motion to reopen side of this of this equation, the only thing he has to say is a change in law, which how do you explain, I mean, Lugo Resendez, which was a motion to reopen case that was we sent back to the BIA. It wasn't affirmed on some alternative ground. And that was purely, as I understand it, a change in law case really based on Lopez versus Gonzalez, you know, the Supreme Court case saying possession no longer qualifies as an aggravated felony. How how can Lugo Resendez be squared with the idea which which the statute may support that it's it's limited to facts when you're filing a motion to reopen? Well, two things. So, first of all, Lugo Resendez, to be clear, to the extent that it was addressing motion to reopen equitable tolling, what it did there was it remanded the matter back to the agency because the agency had not discussed whatsoever and entirely skipped whether a change in law warranted equitable tolling of the statutory motion to reopen period. It didn't address, though, whether a change in law in and of itself would be grounds to reopen the case. It simply said we have to stop this at square one, which is is this thing even timely because the agency entirely skipped the equitable tolling analysis and we are not going to do it ourselves. So we're sending this back down to the agency so that they can start from there, determine whether equitable tolling is applicable to begin with. And then, you know, obviously, it seems to me, why, I mean, why do you even get into that if if a motion to reopen can't cover a change in law? Well, so this is in part getting into a broader topic about kind of the petitioners throwing a bunch of oranges into the barrel of apples and then asking the court to a lot of times these motions, unfortunately, as it's borne out over the the these are all these unpublished decisions from the board that we're looking at and what have you. It's not entirely clear how much or how little is encompassed in the motion. It's not uncommon, I think, for a motion to reopen, even where the only thing before the court or before the board seems to be this change in law, or at least that's the impetus for it, also includes new facts. And so, in fact, it becomes a combination motion to reopen, motion to reconsider. That was what happened in Zao, where the court said, listen, the parties are saying one thing and another, but we're going to just set it straight. There's a change in law argument. That's reconsideration. And there's a new fact argument. And that's reopening. So this is both. So I think what is often happening is that things get muddled because all those strings are not kind of teased out and separately identified. And what you have is someone saying, OK, look, there's a change in law that undoes my removability. Also, there's new facts. The fact, for example, I've continued to stay in the country for a continuous period of at least 10 years during that entire time, up until the point I apply for, let's say, cancellation of removal. If you allow me to, by reopening the proceedings, I can prove that I had good moral character. Here's why, et cetera, et cetera, et cetera. I can and I can prove during that 10 year period I didn't commit any crimes. Here's why, et cetera, et cetera, et cetera. These are all new facts. And oftentimes that part is glossed over or skipped over. And that can result in why there's sometimes some ambiguity or confusion when we see something go back down, like in Lugo Resendez or like in other cases, unpublished cases, where it seems like the whole thing is about a motion to reopen and then they remanded to consider the applicability of equitable tolling based on a change in law. Full stop. And so there's just some context that's missing there oftentimes that makes it difficult to engage in the comparison that counsel is asking for of comparing these apples to apples when we don't know if we're having an apple and an orange or an apple and an apple, because there's just, frankly, too much ambiguity in the record. Well, I mean, it's a recurring procedural issue. It's just surprising BIA isn't more clear about it. And you've seen the cases cited by the other side and by the amicus. I mean, there's one from 2019, a BIA decision specifically on Damiah. And it says because the responding quickly filed a motion to reopen when Damiah issued, he acted within reasonable diligence in seeking reopening. I mean, that's the BIA saying Damiah can be the basis for it just seems this is a frequent issue. Why doesn't the board have a more consistent or clear explanation of what the I can't I can't pretend to get to guess why it would be. I mean, we could all speculate. Maybe it's volume and they're just trying to move these decisions quickly. You know, they're unpublished. They're not going into excessive detail because they assume the party's familiarity is with the facts. And for all we know, these could be this could be reopening in quotation marks granted under the courts to respond to authority. Mr. DiManchio, judge, is there any court of appeals that has held that new law can constitute new facts under the statute governing reopening? I am not aware of any authority, your honor. I'm not pretending that I've researched every decision in all the courts of appeals. I'm not aware of any authority. Well, that's yeah, well, that's sort of what I I thought, because both of your briefs were very wide ranging. But it seems to me that's interesting. Well, I think that lends itself to, again, the natural reading of the statutes that govern here support the principle that a law passed by Congress or an opinion issued by the court is not, quote unquote, a fact to be proven at a hearing, as is required by the motion to reopen statute so much as it's, quote unquote, pertinent authority supporting an alleged error in the existing record, as is required and contemplated by the motion to reconsider statute. And again, this distinction has been drawn by the court in Zao and applied in Barillas Rivera to reject precisely this kind of argument where the petitioners contending that the board should have considered something a motion to reopen when, in fact, all it did was cite to a change in law, which falls into the bucket of a motion to reconsider. And so for that reason, it was not at least one petitioner out there, at least I think it's Miguel Aguilar Elias, who makes the same argument as this petitioner and is allowed to reopen his case. And then, Mr. Gonzalez, isn't I mean, isn't that treating the exact same posture differently? Isn't that the definition of arbitrary? Well, there I'm glad you raised that question, Your Honor, because another point I wanted to make is that it's it's, again, difficult to square these up as apples to apples in this regard, which is the regard of discretion. It should not be lost on the court that a motion to reopen or a motion to reconsider is ultimately within the discretion of the agency to grant, even if that's not why they dismiss Mr. Gonzalez, as they said, the BIA just said it doesn't apply to changes in law. But they're allowing it if it doesn't apply to changes in law, I wouldn't think there's any discretion either way that comes in. That's that's discretion if they want to allow it for changes in law. OK, I'm glad you're asking that question because I realize I need to clarify something. I want to be precise when I say they have discretion to act. So, first of all, they, of course, have total and unfettered discretion to exercise their sui sponte authority, which sometimes you are seeing happening in these cases, or I'm not saying that that was the situation here, because obviously they denied to exercise, declined to exercise their sui sponte authority. When I was saying the discretion, I meant to say this, which is that if someone were to satisfy the statutory requirements for a motion to reopen or a motion to reconsider, even under those circumstances, the agency can still say, well, as a matter of discretion, based on the totality of the circumstances, looking at this as a whole, we're still not going to reopen or not going to reconsider. And frankly, we got a very strong sense that that's what the agency would do were this to have gone through. And they actually consider this on the merits because you'll notice that when the agency denied reopening under its sui sponte authority at page nine of the record, they clearly believe that as a matter of discretion, the passage of time and the legality of the removal order at the time that it was issued would militate against reopening. And to be sure, in declining to exercise their sui sponte authority, the board reason that Mr. Gonzalez was removed the better part of two decades ago under law that existed at the time. And while DiMaio might have led to a different outcome if decided earlier, the Supreme Court's decision in Teague dictates that it has long been established that final civil judgment entered under a given rule of law may withstand a subsequent judicial change in that rule. So this principle, while here was couched in the sui sponte context, which is waived on review. So petitioners not challenging this aspect of the decision. But I raise it to the court's attention because this type of thing may very well inform why you have two cases that seem to be on all fours or similar in terms of their different decision, because in its assessment, one case warrants a discretionary grant and the other doesn't. Does that answer your question, Judge Costa? It does, I understand the discretion point, but it just seems to me if the position is a motion to reopen cannot apply to changes in law, then there would be no discretion and they should never be allowed for that. I understand you're saying if it's within the procedural rules that are proper, then there's this discretion. I get that. But how could if your position is it has to be based on a change in fact, how could the agency ever allow a motion to reopen? Not a sui sponte, but one filed by the petitioner under the 90 day limits. How could it ever allow that if if a change in law doesn't qualify? I think technically it couldn't. But what might be happening or probably is happening there is that what's being glossed over is that there's also some factual underpinning in addition to the change in law that supports reopening. And there's a fast and glossy decision coming out that says we're going to grant reopening based on this change of law. But what's being skipped over is like the petitioner's brother, for instance, which they they rely on in their in their brief. He filed based on a change in law. And in addition to that, he said to the in his motion, he indicated that he would be eligible for cancellation of removal. And so presumably he supported his motion with facts that would show at a hearing that he would be eligible for cancellation of removal. And so that would be a situation where the words on our change of law and then the and reopening and the board says, OK, sure, we'll reopen based on that change of law and kind of glosses over the fact that what was supporting that motion in addition to the change of law was these new facts that have proven out of hearing. It's also possible that in a decision like Aguilar-Liaz that CASA brought up, it's just it's possible that the adjudicator just got misread our precedents or overread our precedents and just got it wrong. You know, that's always possible. The question is, if that's what happened in that case, does that tie our hands to to decide that, you know, actually a change in law doesn't equal a change in facts for purposes of a motion to reopen? What and I see I'm out of time, Your Honor, but may I answer your question? Sure. What what what counsel's in favor of the court deciding that agreeing with the board that a motion based on a change in law alone cannot amount to a motion to reopen based on new facts would be, again, the the plain text of the INA and the provisions that spell out the motions for reopening a motion for reconsideration. This court's decisions in Singh and Zhao that clearly delineate the differences between these two and the application of that of that law in Barillas-Rivera, where the court rejected exactly this kind of argument, Your Honor. Well, we'll we'll certainly read those cases. Counselor, I have one more question. I want to understand the government's position. If there's a new Supreme Court case that requires also then some new facts to be submitted, maybe like petitioner's brother situation, then you could file a motion to reopen. Is that is that the position? I'm just trying to figure it out. Yes, that would fall. Yes. So to be in a hypothetical situation where there's a change in law which would potentially provide a basis for a motion to reconsider. But to be sure, the statute contemplates this is happening basically contemporaneously with the decision within 30 days. We're usually not talking about decades later. But to indulge the hypothetical, if there's a decision that issues that the change in law amounts to an argument that the order of removal was legally erroneous. That would be the basis for a motion to reconsider only. Then if you wanted to also make it a motion to reopen, then technically you would have to put in some new facts that would be proven at a hearing that would show you're eligible for some relief, like cancellation of removal, asylum, withholding, what have you. So, yes, that that's exactly what I'm saying, is that for it to be both of reconsideration and reopening motion, it would have to satisfy both of the statutes, which I've reiterated over and over. I won't do so again. And that's not present here. We have a motion that was squarely and exclusively couched as one for reconsideration, only reference reconsideration by name, only reference the change of law as the basis, only cited to the reconsideration statutory and regulatory provisions. And but for one footnote that exclusively relied on the change in law as a potential new fact doesn't provide any basis for the court to conclude, oh, this is a motion to reopen based on some new facts that the petitioner plans to prove at a future hearing. And so for that reason, your honor, those reasons and for the reasons in the government's brief, we would ask that you deny the petition for review. All right. Thank you, counsel. And we'll now rebuttal. Thank you. Briefly, your honors, on that point, the the practice, the ability to have a change in law, reconsider or reopen an alien's ability to have their case eventually have either cancellation, termination or other relief from removal has been held by this court numerous times, including most recently Patel versus Sessions, which was from 2018 and Pineda versus Whitaker from again from 2018. Those were cases where it did not even specify what this court in deciding those didn't need to specify whether reopening or removal. They they recognized that the Maya itself was a change in law and allowed the change in law to function, to vacate or provide relief from removal. And exactly what I mean, isn't that a weird, isn't that a strange state of affairs where you have a new decision from the Supreme Court? It may well grant a petitioner relief, but we don't really know what the statutory time limit for filing to take advantage of that decision is. Is it 30 days? Is it 90 days? And that's exactly your honor, why what we've said, that's exactly why no court has put a 30 or 90 day limit on that, because my brother speaks of apples and oranges. I'm putting them into a into a fruit basket and any either apples or oranges are entitled to equitable tolling in their equity and equitable tolling applies in both ways to both types of motions. We probably all agree that equitable tolling applies to both. I'm just saying, what's the statutory time limit on the motion that is premised in the new Supreme Court? The new law is a 30 day. It is. It is. There are statutory limits if that person had not needed tolling. But once they need tolling, there is no time limit on how long that tolling can last as Bautista Marina tests that there is not a limit. And especially because and that is exactly why Lugo Resende is specific. Suppose we don't suppose keep equitable tolling out of it altogether. Forget that. Let's let's imagine a case where we don't have to consider equitable tolling and we're just interested in what's the time limit on filing a motion to take advantage of a new Supreme Court decision. You would have to toll because at that point there, well, if there if there is a Supreme Court decision, say an individual is is ordered removed and there's a new Supreme Court decision the next day and the person is still in the United States, it would be a 30 day time limit because they're not seeking any tolling because they're not on time. Why would it be a 30 day time limit under your argument? For a motion of reconsideration, that's the statutory limit is 30 days for motion to reopen. It would be 90 days. They would file within those. And if they're outside of those, and that's exactly what we're saying. And once they once they're outside the 30 or 90 day statutory limit, then the court looks at your situation where we don't the Supreme Court decision comes out day after removal is ordered. But the the the petitioner is dilatory and just just take 60 days. And that's exactly what we're exactly what we're asking for. The court looks at equitable tolling and says, you know, I'm saying no equitable tolling is she just makes a mistake and it takes 60 days. So what would we say there? He doesn't meet the 30 day time limit for a motion to reconsider. Or do we then apply the motion to reopen? It would depend on whether she sought both forms of relief. And if this court is deeming one or the other in a way that precludes relief for the the petitioner, Reyes-Mates says motions to reopen a motion reconsider based on changes in law, because this happens all the time, that DiMaio was a change in law, there have been other changes in law, the the Johnson case with respect to controlled substances or crimes of violence. This happens frequently. We're familiar with either of those are allowed for tolling and the tolling has to be done on an individualized basis, but you don't get limited by 30 or 60 on the end of it. What happens is the court takes into account both the diligence and and they have to count diligence from the appropriate date, which, again, is the the unlawful knowledge of the unlawfulness. And that's what we're arguing here. The knowledge of the unlawfulness of the removal and then examine diligence from there, which is exactly what Rosenda has called for. And that is, I just I think another way to put what Judge Duncan is saying is that you're just collapsing any possible distinction between the 30 day and the 90 day rule. We're not collapsing. We've applied for both. And both should apply. I know you've applied for both. But what I'm saying is what you're saying is 30 days doesn't matter on your reasoning because there's really no very little difference between 30 days and 90 days. Except for in Mr. Gonzalez's case, because we're 20 years after that now. We're 20 years after when the 30 or 90 would have applied, which was well, I use something if he missed if if this court holds that he missed 30 days, you're saying that makes no difference because he's got 90. Why isn't that? I mean, what's the difference in the statutes? It would it would it may make a difference for someone who hadn't sought both types of relief. But here he has. But but that's why we have so much confusion in the law. And in fact, Lugo Resendez, everybody to everybody seeks relief under both statutes, don't they? I can say that we did because the the practice manual allows us to do so. And I didn't say you couldn't. But I did say there is a difference in the wording of the statutes and ultimately that ought to mean something. Except not except not for the extent when the the change in law is as this court has already held a basis for immigration relief. And it's clear there may be other circumstances where there are differences in motions to consider. I explained, for example, if there's a post conviction relief, you would have one but not the other here. Both apply. Both are available. Both sets of tolling continue. And we believe that if the immigration judge had followed exactly what was done in Bautista Marino and followed what Lugo Resendez had with both of which and Lugo Resendez is controlling law, which says do not put a a a it literally says do not put a bright line rule. If the immigration court had not done that and the Board of Immigration had not approved that, we would we would proceed as Mr. Bautista Marino did, as well as as Mr. Gonzalez's own brother had the idea that his motion for reopen motion for relief would be denied after two months. And Mr. Gonzalez's own would be denied after 21 days speaks to the inequity, inequitability of the way that the BIA rendered this case. And that constitutes the error of law between the wrong date, your argument, your time's up. You've already gone over. All right. Thanks to both sides for the helpful arguments. The case is submitted. Thank you. Your Honor. Excuse yourself from the Zoom. Thank you.